**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PLATTE VALLEY PLUMBING & HEATING, Respondent.**

No. 84–1081.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1984.

Decided Nov. 9, 1984.

District Judge for the District of South Dakota.

Dean G. Kratz, Omaha, Neb., for respondent.

Helen L. Morgan, Washington, D.C., for petitioner.

Before ARNOLD and JOHN R. GIBSON, Circuit Judges, and DUMBAULD,* Senior District Judge.

DUMBAULD, Senior District Judge.

The National Labor Relations Board (NLRB) petitions for enforcement of its order of September 30, 1982, wherein it found respondent, Platte Valley Plumbing and Heating, guilty of engaging in an unfair labor practice in violation of 29 U.S.C. 158(a)(5) by refusing "to bargain collectively with the representatives of his employees."

Respondent is a contractor at Scottsbluff, Nebraska, and employed about 17 employees, of whom 8 were plumbers. Bryan Salstrom is respondent's owner and manager.

On May 13, 1981, Herbert Magallanes, business manager of the plumbers' union (Local 430), in company with the union's president, visited Salstrom in his office and announced that all but one of Platte Valley's plumber employees had signed cards authorizing the union to represent them. They handed Salstrom a proposed contract, which he asked for time to review, and the next meeting was held on June 4, 1981. He had marked in yellow provisions he objected to, or wanted to change, or ask

* The Honorable Edward Dumbauld, U.S. Senior District Judge of the Western District of Pennsylvania, sitting by designation.

questions about. Agreement was achieved on some points, and Magallanes promised to submit a revised proposal, but this was never done. Salstrom was unable to attend the next scheduled meeting on June 17, but a meeting was held on the next day. Further areas of agreement were reached.

Then on June 30, Magallanes and the union president returned to Salstrom's office and notified him that if their proposed contract was not signed by 4:30 p.m. the men would strike the following day. They did. As Magallanes testified and the ALJ found, the strike occurred "in the midst of negotiations that were fruitful and promising, and that still were in their infancy."

Salstrom failed to attend a meeting on July 13, without telling Magallanes. On July 14, picketing began for two weeks. By then all employees had returned to work or obtained jobs elsewhere. Beginning in August the union persuaded several other plumbing contractors to sign the contract originally offered to Salstrom.

Soon after July 13, when Salstrom failed to attend a meeting, Magallanes wrote about 40 letters to Salstrom in the following form:

> This letter is to inform you that there will be a contractor's meeting on Wednesday, July 29, 1981 at the hour of 10:00 A.M.
>
> If you cannot make it to this meeting, please call me at 635–3300 and set up a day and time that you can be here. It will be held at the same place, at the Labor Temple, 19 E. 15th St., Scottsbluff, Nebraska.

The second paragraph first appeared in the letter of July 24, 1981.

Salstrom did not answer any of these letters, nor did he attend meetings. Other than by sending these letters, Magallanes made no offers to meet, nor did any union representatives telephone or visit Salstrom at his office.

On July 20, 1981, the union filed the charge upon which the order here under review was based.

■ Although the situation seems to have chiefly involved personal pique and discourtesy on both sides rather than refusal to negotiate in good faith, it is nevertheless true that Salstrom never actually resumed discussions with Magallanes, the union representative, in spite of repeated letters from Magallanes inviting Salstrom to attend meetings at the union's office along with other contractors.

The fact that Magallanes did not return to Salstrom's office as the place of conducting further negotiations does not invalidate his offer to negotiate. The place of meeting is a mere matter of protocol or prestige and does not constitute a matter of substance. Salstrom may have regarded the union representative's demands as an affront or discourteous arrogance, but nevertheless it was the employer's duty to continue to negotiate.

■ Similarly, the fact that other contractors were to be present did not defeat the *bona fides* of the union's request to resume bargaining. Many labor contracts are negotiated collectively, notably the bituminous coal mining agreements.

■ Likewise the fact that an economic strike took place during negotiations, and that a complaint was filed with the NLRB, are not circumstances relieving Salstrom from his duty to continue bargaining.

In view of the limited jurisdiction of this Court to review the findings of fact made by the NLRB [1] (in fact there are no significant disagreements between the parties regarding the course of events) we are unable to hold that the Board's decision is not supported by substantial evidence on the record considered as a whole, or is contrary to law, in excess of its statutory authority,

1. "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. 160(e); *Procter*

& *Gamble Mfg. Co. v. NLRB,* 603 F.2d 1310, 1313 (8th Cir.1979); *NLRB v. Hale Mfg. Co.,* 570 F.2d 705, 708–709 (8th Cir.1978).

arbitrary or capricious, or otherwise invalid and unenforceable.

Enforcement granted.